UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
Case No.:_____

UNITED STATES OF AMERICA f/u/b/o )
AMERICAN ELECTRIC COMPANY, LLC )
)
      Plaintiff, )
)
v. )
)
TRAVELERS CASUALTY & SURETY CO., )
a foreign corporation; )
)
ZURICH AMERICAN INSURANCE CO.; )
a foreign corporation; and )
)
FIDELITY AND DEPOSIT COMPANY )
OF MARYLAND, )
a foreign corporation, )
)
      Defendants. )
)

**FEDERAL MILLER ACT COMPLAINT**

Plaintiff, UNITED STATES f/u/b/o AMERICAN ELECTRIC COMPANY, LLC ("AEC"), by and through its undersigned attorneys, files this Federal Miller Act Complaint against Defendants, TRAVELERS CASUALTY & SURETY CO. ("Travelers"), ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), and FIDELITY AND DEPOSIT COMPANY OF MARYLAND ("Fidelity") (collectively referred to herein as the "Sureties"), and in support thereof alleges as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff AEC is, and at all times relevant hereto was, a Hawaii limited liability company authorized to do and doing business in the state of Hawaii with its headquarters and principal place of business in Mililani, Hawaii.

2. Upon information and belief, Travelers is, and at all times relevant hereto was, a Connecticut corporation, with its principal place of business and headquarters in Hartford, Connecticut. Travelers is a commercial surety company that issues, among other things, payment and performance bonds on private and public construction projects.

3. Upon information and belief, Zurich is, and at all times relevant hereto was, an Illinois corporation, with its principal place of business and headquarters in Schaumberg, Illinois. Zurich is a commercial surety company that issues, among other things, payment and performance bonds on private and public construction projects.

4. Upon information and belief, Fidelity is, and at all times relevant hereto was, an Illinois corporation, with its principal place of business and headquarters in Schaumberg, Illinois. Fidelity is a commercial surety company that issues, among other things, payment and performance bonds on private and public construction projects authorized to do business in the State of

Florida.

5. Subject matter jurisdiction of this action is founded on the federal Miller Act, sections 3131 to 3134 of Title 40 of the United States Code Annotated (40 U.S.C.A §§ 3131 to 3134).

6. Venue is proper in this Court as the underlying subcontract no. 6602073-0014-K (the "Subcontract") between AEC and The Haskell Company ("Haskell"), Attachment A, Section 17(f), designates that any action "shall proceed in either The (sic) Federal District Court for the Middle District of Florida Jacksonville Division or the Fourth Judicial Circuit in and for Duval County." Because a Miller Act claim is properly before federal courts, the Federal District Court for the Middle District of Florida, Jacksonville Division is the proper venue per the Subcontract. A true and correct copy of the Subcontract is attached hereto as **Exhibit A**.

7. Pursuant to the requirements of the Subcontract, personal jurisdiction is proper in this Court under the Miller Act. This Court has held that personal jurisdiction may be established pursuant to a statute authorizing nationwide service of process. Specifically, when:

> a federal statute provides for nationwide service of process, the service of process is sufficient to establish jurisdiction over the defendant, so long as jurisdiction is consistent with due process.

> Because the sovereign exercising its judicial power in this case is the United States, [the] plaintiff need not demonstrate the minimum contacts with the forum state [as] required by *International Shoe* [*Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945)].

*U.S. For Use & Benefit of Expedia, Inc. v. Altex Enterprises, Inc.*, 734 F. Supp. 972, 973 (M.D. Fla. 1990) (citation omitted) (emphasis added). Furthermore, the Sureties regularly conduct business activities in the state of Florida sufficient so as not to offend the minimum contacts requirement and are, in any event, individually registered with the State of Florida.

## II.  FACTUAL BACKGROUND

8. On or about August 12, 2016, the United States of America, acting through the United States Coast Guard (the "USCG"), and Haskell, entered into a written contract, contract no. HSCG50-16-J-PHN001 & HSCG50-16-R-PHN001 (the "Contract"), by the terms of which and for consideration of eighteen million nine hundred seventy-three thousand three hundred sixty dollars ($18,973,360.00) Haskell agreed to perform certain construction improvements related to the National Security Cutters Homeport at the USCG Base of Honolulu (the "Project"). A true and correct copy of the award for the Contract is attached hereto as **Exhibit B**.

9. In accordance with 40 U.S.C.A. § 3131, Haskell, as principal, and the Sureties executed a standard government form of payment bond to the United States, Travelers' Bond No. 106363690 and Fidelity/Zurich Bond No. PRF9217226 (the "Bond"), by the terms of which Haskell and Sureties bound themselves jointly and severally, as to the penal sum, conditioned that if Haskell shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided in the Contract, this obligation would be void; otherwise, to remain in full force and effect. A true and correct copy of the Bond is attached hereto as **Exhibit C**.

10. Subsequently, pursuant to the Contract, Haskell entered into the Subcontract with AEC, wherein AEC agreed to a specified electrical scope of work on the Project, the details of which are specified therein.

11. AEC mobilized to perform its scope of work on the Project on April 17, 2017, with an anticipated Project completion date of August 10, 2018.

      **A.**    **Haskell and/or the USCG failed to pay AEC for the Faithful Performance of Extra Work**.

12. When AEC compiled its price to perform its work on the Project, it did so in full reliance upon the plans and specifications provided by Haskell and based upon the understanding it would be able to prosecute its work on the Project in a timely, efficient, and sequential manner, in accordance with

the Project schedule provided to AEC by Haskell.

13. However, once AEC began working on the Project, it became clear that the Project was not fully and properly designed and that much of the plans and specifications upon which AEC relied were defective.

14. AEC discovered many of these defects and timely notified Haskell of the same, which Haskell then conveyed to its design professionals, and which Haskell then issued corrections or revisions to the plans and specifications for the Project.

15. Once such design was corrected or changed, Haskell directed AEC to perform the additional and/or changed work.

16. Because of a failure to responsibly manage the Project, the directions issued by Haskell were often themselves defective and/or interfered with AEC's performance of its work on the Project, leading to further changes to AEC's work and for which Haskell has not yet compensated AEC ("Unpaid Changed Work").

17. Haskell also directed AEC to perform other additional work that fell outside of AEC's scope specified under the Subcontract ("Extra-Contractual Work"). Haskell has failed to compensate AEC for the Extra-Contractual Work (collectively, Unpaid Changed Work and Extra-Contractual Work shall be referred to herein as "Extra Work").

18. AEC timely submitted change requests for additional contract time and/or compensation related to the Extra Work, following the submission of which Haskell directed AEC to perform the Extra Work without time and/or compensation adjustments.

19. AEC timely notified Haskell that the Extra Work was unpaid, and that AEC timely requested additional time and/or compensation for faithful performance of the same. To wit, Haskell has refused to compensate AEC despite its faithful performance of the Extra Work.

20. As of the date of this Complaint, the value of the completed Extra Work for which Haskell has refused to pay AEC in the past ninety (90) days, is valued at three hundred eighty-three thousand seven hundred ninety dollars and eighteen cents ($383,790.18).

    **B. Haskell and/or the USCG caused AEC to incur delay and inefficiency costs, for which Haskell and/or the USCG failed to compensate AEC**.

21. In addition to the design issues that plagued the Project, Haskell mismanaged the Project, compounded by Haskell's heavy staff turnover. Further, the USCG failed to rectify damages claims and direct performance of curative work in a timely or efficient manner. In addition, the USCG and/or Haskell caused schedule compression without effect, leading to completion date extensions, which extended the Project to June 19, 2021—over two (2)

years beyond the original completion date (collectively, the "Impacts").

22. The Impacts caused AEC to incur additional costs related to delays, disruptions, and inefficiencies associated with the performance of its scope under the Subcontract and the Extra Work (collectively, the "Delays and Inefficiencies").

23. As work on the Project continued to extend well beyond the originally scheduled completion date of April 29, 2018, AEC diligently tracked the costs incurred as caused by the Extra Work, Impacts, and Delays and Inefficiencies and timely provided notices of impact to Haskell.

24. As of the date of the above-styled action, the costs of AEC's Delays and Inefficiencies, for which AEC has not yet been paid for the past ninety (90) days, is approximately one million dollars ($1,000,000.00).

### C.  Summary of Damages.

25. AEC's damages remain unpaid despite repeat demands for payment, total one million three hundred thousand eighty-three seven hundred ninety dollars and eighteen cents ($1,383,790.18), and are summarized as follows:

> a. Three hundred eighty-three thousand seven hundred ninety dollars and eighteen cents ($383,790.18) claimed for Extra Work performed but not paid;

    b.    Delays and Inefficiencies, for which AEC has incurred costs in the amount of approximately one million dollars ($1,000,000.00);

    c.    Attorneys' fees and costs incurred for this matter; and

    d.    Pre- and post-judgment interest, as appropriate.

## COUNT I:

## RECOVERY ON MILLER ACT PAYMENT BOND

26.    AEC adopts and incorporates by reference Paragraphs one (1) through twenty-five (25) above, inclusive, as if fully set forth herein.

27.    Haskell has failed and neglected to pay AEC sums due in accordance with the Subcontract in the approximate amount of one million three hundred eighty-three thousand seven hundred ninety dollars and eighteen cents ($1,383,790.18), plus costs, fees, and interest.

28.    As a subcontractor in direct privity with the general contractor, AEC has no legal obligation to serve a ninety-day preliminary notice pursuant to 40 U.S.C § 3133(b)(1) and (2).

29.    The last day of work for the Project was June 19, 2020 (the "LDW"). The LDW neither involved warranty nor corrective work but instead involved paid and approved work.

30.    More than ninety (90) days have expired since AEC last performed

such work in connection with the above-mentioned Contract for which this specific claim is made.

31. On or about October 22, 2020, AEC provided the Sureties with notice of claim on the Bond (the "Notice"). A true and correct copy of the Notice is attached hereto as **Exhibit D**.

32. AEC has complied with all rules and requirements of the Miller Act for perfecting a right of action under the Bond.

33. AEC is entitled by law to recover interest on the above-stated amounts due at the maximum legal pre-judgment interest rate from the date the sums became due and owing to the date of judgment. AEC is also entitled by law to recover interest at a maximum legal post-judgment interest rate from and after the date of judgment until paid.

34. One (1) year has not elapsed from the date on which the last work was performed by AEC for Haskell on the Project, and although due demand has been made on Haskell and Sureties, no part of the $1,383,790.18, or any interest on such sum, or any sums owed as stated above, has been paid to AEC.

35. Alternatively, AEC has provided services and furnished materials to Haskell and such services and materials were received and accepted by Haskell in its capacity as general contractor on the government construction project made subject of this lawsuit. AEC expected payment for such services

and materials from Haskell and they were furnished under such circumstances that Haskell knew or should have known AEC expected to be paid for such services and materials. Payment for a just amount due for these services and materials has not been received by AEC. Haskell will be unjustly enriched in the amount to be claimed by AEC if Haskell is allowed to retain the benefit of the services and materials without payment for their reasonable value.

36. Haskell was negligent toward AEC in that it failed to properly administer and manage the Project; such failures being the proximate cause of delays and extra work of which AEC has complained herein. AEC seeks damages for such extra work and increased costs as a result of such negligence by Haskell.

37. AEC has employed the undersigned attorneys to enforce payment pursuant to the Subcontract and is entitled, pursuant to the terms of the Subcontract, to recover from Sureties an amount as reasonable attorneys' fees and costs. *See* **Exhibit A**, Attachment A, Section 17(f) ("The prevailing party in any such action shall be entitled to an award of all attorneys' fees and costs").

38. AEC has been damaged based on the above facts.

### III.   RELIEF SOUGHT

WHEREFORE, the United States of America, f/u/b/o American Electric Company, LLC, hereby requests judgment against Defendants Travelers

Casualty and Surety Co., Zurich American Insurance Company, and Fidelity and Deposit Company of Maryland, jointly and severally as follows:

    a.    For all sums due, owed, and outstanding claimed herein, with any additional amount(s) due subject to proof, together with the maximum rate of legal prejudgment interest from the date the sums became due and owing to the date of judgment, and the maximum rate of legal post-judgment interest from and after the date of judgment until paid;

    b.    For the costs of this action;

    c.    For reasonable attorneys' fees incurred in prosecuting this action; and

    d.    For such other and further relief as this Court deems just and proper.

**Dated: June 18, 2021**.　　　　　　　Respectfully submitted,

    */s/ Gregory S. Martin*
    _____
    Gregory S. Martin, Bar No. 0858404
    *Local Rule 2.02(a) Lead Counsel*
    **Martin | Hild, P.A.**
    555 Winderley Place, Ste. 415
    Maitland, Florida 32751
    Tel: (407) 660-4488
    Fax: (407) 660-4540
    gsm@martinhild.com