**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA
f/u/b/o AMERICAN ELECTRIC
COMPANY, LLC,

      Plaintiff,

v.                                                  Case No. 3:21-cv-614-MMH-JRK

TRAVELERS CASUALTY &
SURETY CO., ZURICH
AMERICAN INSURANCE CO., and
FIDELITY AND DEPOSIT
COMPANY OF MARYLAND,

      Defendants.
_____/

# O R D E R

**THIS CAUSE** is before the Court on The Haskell Company's Motion to Intervene Pursuant to Rule 24, Federal Rules of Civil Procedure and Supporting Memorandum of Law (Doc. 14; Motion to Intervene), filed on August 26, 2021. Plaintiff, United States of America for the use and benefit of American Electric Company, LLC (AEC), timely filed a response in opposition to the Motion to Intervene. See United States of America f/u/b/o American Electric Company's Opposition to The Haskell Company's Motions to Intervene and Compel Arbitration and to the Sureties [sic] Motion to Stay Proceedings (Doc. 20; Response), filed September 8, 2021. With leave of the Court, The Haskell

Company (Haskell) filed a reply to the Response on October 5, 2021. See Proposed Intervenor, The Haskell Company's Reply to United States of America f/u/b/o American Electric Company's Opposition to The Haskell Company's Motions to Intervene and Compel Arbitration (Doc. 25; Reply). Accordingly, this matter is ripe for review.

## I.  Background

In 2016, Haskell entered into a contract with the United States Coast Guard to be the general contractor on a construction project at the National Security Cutters Homeport at the U.S. Coast Guard Base in Honolulu, Hawaii (Project). See Motion to Intervene, Ex. A: Order for Supplies or Services (Doc. 14-1). In accordance with the Miller Act, 40 U.S.C. § 3131 et seq., Haskell posted a payment bond with Travelers Casualty & Surety Company of America, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company (collectively, "Surety Defendants"). See 40 U.S.C. § 3131(b)(2) ("Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building . . . a person must furnish . . . . [a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work . . . ."); Motion to Intervene, Ex. C: Payment Bond (Doc. 14-3; Payment Bond). Pursuant to the terms of the Payment Bond, the Surety Defendants and Haskell are jointly and severally liable for payment of the full amount guaranteed. See Payment Bond at 2.

Nevertheless, Haskell represents that it has agreed to indemnify the Surety Defendants for any liability incurred on the Payment Bond.  <u>See</u> Motion to Intervene at 2–3.  In 2017, Haskell entered into a subcontract agreement with AEC for AEC to perform work on the Project.  <u>See</u> Motion to Intervene, Ex. B: Subcontract Agreement (Doc. 14-2; Subcontract).  The Subcontract includes a binding arbitration provision for disputes between Haskell and AEC.  <u>See</u> Subcontract at 23–25.

AEC commenced this action on June 18, 2021, by filing suit under the Miller Act against the Surety Defendants.  <u>See</u> Federal Miller Act Complaint (Doc. 1).  In its amended complaint, filed July 6, 2021, AEC alleges that it is entitled to recover from the Surety Defendants on the Payment Bond because Haskell did not pay AEC everything due under the Subcontract or pay AEC for extra work and increased costs caused by Haskell's actions.  <u>See</u> Plaintiff, United States of America f/u/b/o American Electric Company, LLC's Amended Federal Miller Act Complaint (Doc. 5; Complaint) ¶¶ 14, 16, 18, 20, 23–24, 32–36. On August 26, 2021, Haskell filed the Motion to Intervene, in which it seeks to intervene in this action as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure (Rule(s)) or, alternatively, for permissive intervention under Rule 24(b)(1)(B). Motion to Intervene at 8, 12; <u>see</u> Fed. R. Civ. P. 24(a)–(b).  Haskell represents that it seeks to intervene to compel arbitration of the dispute with AEC as required in the Subcontract.  Motion to Intervene at 13.

3

Haskell further asserts that, if the Court does not compel arbitration, Haskell will seek to assert a counterclaim against AEC for damages allegedly caused by AEC's actions on the Project.  Id.

Seeking to satisfy the requirements of Rule 24(c), Haskell attached to its Motion to Intervene a motion to compel arbitration, which it also filed on the Court's docket in this case.  See Motion to Intervene, Ex. D (Doc. 14-4); The Haskell Company's Motion to Compel Dispute Resolution and Arbitration and Stay Action Pending Arbitration and Supporting Memorandum of Law (Doc. 15; Arbitration Motion).  While AEC opposes the Motion to Intervene, the Surety Defendants have consented to it and also moved to stay the proceedings pending completion of the arbitration.  See Motion to Intervene at 14; Defendants, Travelers Casualty & Surety Co., Zurich American Insurance Co., and Fidelity and Deposit Company of Maryland's Motion to Stay Pending Resolution of Arbitration and Supporting Memorandum of Law (Doc. 16; Motion to Stay Pending Resolution of Arbitration), filed August 26, 2021.  In addition, the Surety Defendants have moved to stay all pending case deadlines until the foregoing motions are resolved.  See Defendants, Travelers Casualty & Surety Co., Zurich American Insurance Co. and Fidelity and Deposit Company of Maryland's Motion to Stay All Pending Deadlines, or in the Alternative, for Enlargement of Time to Conduct Case Management Conference and File Case Management Report (Doc. 24; Motion to Stay Pending Deadlines), filed

September 30, 2021. AEC timely responded to the Motion to Stay Pending Deadlines. See Plaintiff's Opposition to the Defendants' Motion to Stay All Pending Deadlines, or in the Alternative for Enlargement of Time to Conduct Case Management Conference and File Case Management Report (Doc. 26; Response to Motion to Stay Pending Deadlines), filed October 11, 2021. The Surety Defendants have not yet answered AEC's Complaint, the Court has not issued a scheduling order, and it does not appear that any discovery has occurred.

## II.    Legal Standards

Rule 24 recognizes two paths for a non-party to intervene in a federal action: intervention as of right and permissive intervention. In re Bayshore Ford Trucks Sales, Inc., 471 F.3d 1233, 1246 (11th Cir. 2006). The Eleventh Circuit Court of Appeals has described the burden on a party seeking to intervene as of right pursuant to Rule 24(a)(2) as follows:

> A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989). Once a party establishes all of the prerequisites to intervention as a matter of right, "the trial court has no discretion to deny the intervention." Loyd v. Ala. Dep't of Corr.,

176 F.3d 1336, 1340–41 (11th Cir. 1999); see also Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508, 1512 (11th Cir. 1996). Notably, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).

Rule 24(b) governs requests for permissive intervention. A party seeking permissive intervention pursuant to Rule 24(b) "must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Chiles, 865 F.2d at 1213.[1] The district court has the discretion to deny permissive intervention even if both requirements are met. Id. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. Discussion

Because, for the reasons discussed below, the Court finds that Haskell's Motion to Intervene is due to be granted to the extent that Haskell seeks

---

[1] At the time Chiles was decided, the language of Rule 24(b)(1)(B) was set forth in section (b)(2) of Rule 24. As such, the reference to Rule 24(b)(2) in Chiles is to the former Rule 24(b)(2), the substance of which is now found in Rule 24(b)(1)(B). Lyttle v. Trulieve, Inc., Case No. 8:19-cv-2313-CEH-TGW, 2021 WL 2379395, at *3 n.2 (M.D. Fla. June 10, 2021) (citing Chiles, 865 F.2d at 1211 n.15 (quoting the former Rule 24(b)(2))).

permissive intervention, the Court need not determine whether Haskell satisfies the more stringent standards applicable to intervention as of right.

**A. Timeliness**

In determining whether a motion to intervene is timely, the Court must consider

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259 (11th Cir. 2002).[2] The parties agree that the Motion to Intervene is timely. See Motion to Intervene at 9; Response at 5. Haskell filed the Motion to Intervene before the Surety Defendants filed answers, before the Court entered a scheduling order, and before any discovery occurred. No existing party is prejudiced by the timing of the Motion to Intervene, and no unusual circumstances affect the determination of timeliness. Thus, the Motion to Intervene is timely.

---

[2] The timeliness requirement applies regardless of whether a party seeks intervention of right or permissive intervention under Rule 24. United States v. Jefferson County, 720 F.2d 1511, 1516 (11th Cir. 1983).

7

**B. Common Questions of Law or Fact**

A party seeking permissive intervention "must show that its 'claim or defense and the main action have a question of law or fact in common.'" In re Bayshore Ford Trucks Sales, 471 F.3d at 1246 (emphasis omitted) (quoting Fed. R. Civ. P. 24(b) (2006)). Indeed, "the plain language of Rule 24 requires the intervenor's interest to be based on the action pending before the court." Id. Here, Haskell's interest arises from the same set of facts that form the basis of the action currently pending before the Court. Haskell's claims and defenses share common questions of both law and fact with the pending action. AEC's Miller Act claim depends on what caused the delays and cost overruns on the Project, whether AEC is owed any sums under the Subcontract, and Haskell's rights under the Subcontract. See Complaint ¶¶ 14, 16, 18, 20, 23–24, 33–34. Haskell's proposed defenses and counterclaim also depend on these factual and legal questions. See Motion to Intervene at 10–11, 13. Haskell and AEC are the parties to the Subcontract, and, pursuant to the Payment Bond, Haskell is jointly and severally liable for any sum the Court may find the Surety Defendants owe to AEC. See Subcontract at 2; Payment Bond at 2. Under circumstances similar to those presented in this action, other courts have found that the intervening general contractor's claims share common questions of law or fact with the subcontractor's suit against the general contractor's surety. See, e.g., Pro Lawns, Inc. v. Fid. & Deposit Co. of Md., No. 3:14-CV-408-WKW,

8

2015 WL 350637, at *2 (M.D. Ala. Jan. 23, 2015); United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co., 239 F.R.D. 404, 414 (W.D. Pa. 2006); United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co., 349 F. Supp. 2d 934, 938–39 (D. Md. 2004).[3]  The Court reaches the same conclusion here.  Haskell's claims and defenses share common questions of law and fact with the action already pending, and, thus, Haskell has shown that its interest is based on the action pending before the Court.

### C. Undue Delay or Prejudice

Although Haskell meets both requirements for permissive intervention, the Court still "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  In exercising discretion and assessing prejudice, courts in similar cases have considered issues such as whether intervention would further judicial economy, see Mahurin's Constr. Co. v. Granite Re, Inc., No. 04-2174-CM-DJW, 2004 WL 2249489, at *1 (D. Kan. Sept. 7, 2004); whether intervention would delay or greatly complicate the case, see Frank M. Sheesley Co., 239 F.R.D. at 415–16; and whether intervention would cause unfairness by limiting

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

9

or destroying the court's jurisdiction, see Coltin Elec., Inc. v. Cont'l Cas. Co., No. CIV.A. 12-0532-KD-B, 2013 WL 1150920, at *3 (S.D. Ala. Mar. 19, 2013).

In Mahurin's Construction Co., the district court determined that judicial economy was furthered by allowing the general contractor to intervene in its subcontractor's suit against a surety. See 2004 WL 2249489, at *1. There, a subcontractor sued the general contractor's surety, and the general contractor moved to intervene. Id. The court found that permitting intervention "conforms with Rule 24's central goal of preventing a multiplicity of suits that involve common questions." Id. In doing so, the court observed that, if intervention were denied, multiple lawsuits would be likely: the subcontractor versus the surety, the surety versus the general contractor, and the general contractor versus the subcontractor. See id.; Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co., No. 00CV1808(RNC), 2001 WL 789200, at *1 (D. Conn. May 14, 2001); see also Pro Lawns, Inc., 2015 WL 350637, at *5 ("[P]ermitting intervention will promote judicial economy.").

In a similar way, the district court in Frank M. Sheesley Co. found that a general contractor's intervention would not impermissibly delay or complicate the case filed by a subcontractor against the general contractor's sureties under the Miller Act. See 239 F.R.D. at 408, 415–16. The general contractor had moved to intervene and compel arbitration under its contract with the subcontractor. Id. As an initial matter, the court noted that Rule 24 was

10

"meant to prevent the kind of multiplicity of suits that the facts threaten in this case." Id. at 415. For that reason, the court determined that resolving the various disputes in a single proceeding best served the interest of judicial economy. Id. Next, recognizing that the general contractor sought to compel arbitration of the dispute between it and the subcontractor, the court found that allowing intervention would not lead to undue delay or excessive complications because permitting the general contractor to intervene would do "little to alter the essential nature of [the] lawsuit." Id. at 415–16; see also Pro Lawns, Inc., 2015 WL 350637, at *5 (agreeing with Frank M. Sheesley Co.); MPA Constr., Inc., 349 F. Supp. 2d at 935, 939 (permitting a general contractor to intervene in a Miller Act suit when the general contractor sought a stay pending arbitration). Indeed, in the court's view, allowing intervention and arbitration would benefit the parties as the risk of delay would likely be mitigated, not exacerbated. Frank M. Sheesley Co., 239 F.R.D. at 415.

In contrast, in Coltin Electric, the district court denied a general contractor's request to intervene permissively because the general contractor's intervention would have limited the court's jurisdiction and created unfairness to the existing parties. See 2013 WL 1150920, at *3. There, a subcontractor sued a surety to recover on a payment bond under an Alabama state statute similar to the Miller Act. See id. at *1–2. The general contractor that had obtained the payment bond moved to intervene. Id. at *1. The court denied

11

intervention, finding that intervention would prejudice the rights of the subcontractor. Id. at *2–3. In doing so, the court reasoned that allowing intervention would have destroyed diversity in the case because the general contractor and subcontractor were citizens of the same state. Id. Although the court could have asserted supplemental jurisdiction over the general contractor's proposed counterclaim, the court would not have had jurisdiction over any claims that the subcontractor may have wanted to assert against the general contractor. Id. at *3. In addition, the court found that allowing intervention would interfere with the subcontractor's "right under the [payment bond] contract" to elect whether to sue the general contractor or the surety. Id. at *2. In sum, the prejudicial effect of intervention on the subcontractor's choice of forum and choice of defendant weighed against allowing the general contractor to intervene.

Here, all considerations weigh in favor of permitting Haskell to intervene. First, allowing Haskell to intervene in this action will further judicial economy by preventing a multiplicity of suits and the risk of inconsistent results. If denied intervention, Haskell could still initiate an arbitration action or a separate lawsuit against AEC on the underlying contract dispute. Similarly, if Haskell is barred from intervening and AEC recovers against the Surety Defendants, the Surety Defendants may file a separate action for indemnity against Haskell. See Mahurin's Construction Co., 2004 WL 2249489, at *1.

12

These various proceedings would waste resources dealing with the same dispute and would present the untenable risk of inconsistent results. Similar to the intervention permitted in <u>Mahurin's Construction Co.</u> and <u>Frank M. Sheesley Co.</u>, intervention here will save resources and eliminate the risk of inconsistent results. See <u>Mahurin's Construction Co.</u>, 2004 WL 2249489, at *1; <u>Frank M. Sheesley Co.</u>, 239 F.R.D. at 415.

Second, the Court finds that Haskell's intervention will not make the case substantially more complex. Haskell seeks to adjudicate its Arbitration Motion and, if that motion is denied, to assert one counterclaim against AEC. See Motion to Intervene at 13. Like the motion to compel arbitration in <u>Frank M. Sheesley Co.</u>, Haskell's proposed actions will not unduly complicate the case because they relate to the same underlying facts as AEC's Miller Act claim. See 239 F.R.D. at 415–16.

Last, the Court finds that, unlike in <u>Coltin Electric</u>, Haskell's intervention would not limit the Court's jurisdiction or otherwise prejudice AEC, despite AEC's arguments to the contrary. AEC asserts that allowing Haskell to intervene and to move to compel arbitration "would deprive this Court of jurisdiction" and impermissibly "'redefine the defendant and change the forum,' which is AEC's right to choose under the Miller Act." Response at 8–9 (quoting <u>Coltin Elec., Inc.</u>, 2013 WL 1150920, at *2). In doing so, AEC emphasizes that "a surety alone may be sued by a subcontractor under the

13

Miller Act." Id. at 7 (quoting United States ex rel. Henderson v. Nucon Constr. Corp., 49 F.3d 1421, 1422 (9th Cir. 1995)). In its Reply, Haskell maintains that intervention would not change the forum or affect the Court's jurisdiction because the Miller Act claim would be stayed and remain pending in this Court while the arbitration is completed. See Reply at 2. Haskell further argues that AEC's right to sue the surety alone "has no application to Haskell's ability to intervene in this proceeding to compel arbitration." Id. at 2 n.2.

Contrary to AEC's claims, permitting Haskell to intervene will not deprive the Court of jurisdiction or deny AEC its chance to recover under the Miller Act. Unlike the diversity action in Coltin Electric, AEC's federal Miller Act claim invokes the Court's subject matter jurisdiction for claims arising under federal law. See 28 U.S.C. § 1331; Coltin Electric, Inc., 2013 WL 1150920, at *2–3. Thus, the jurisdictional limits at issue in Coltin Electric simply have no application here. Notably, granting intervention does not necessarily mean that the Court will compel arbitration, but, even if the Court does compel arbitration, doing so would not deprive this Court of jurisdiction over the Miller Act claim. The Miller Act claim could simply be stayed pending the resolution of the arbitration. In addition, arbitration is compatible with the Miller Act. Indeed, the Eleventh Circuit has unequivocally stated that "the Miller Act does not preclude arbitration under the [Federal Arbitration Act] where the parties have previously agreed to arbitrate disputes." Emps. Ins. of Wausau v. Bright

14

Metal Specialties, Inc., 251 F.3d 1316, 1324 (11th Cir. 2001).[4]  In sum, AEC fails to present legal authority sufficient to convince this Court that permitting Haskell to intervene would deprive the Court of jurisdiction over this action.

Nor is the Court persuaded that AEC's right to sue the Surety Defendants alone gives AEC a right to exclude Haskell from this action.  Several cases cited by AEC have nothing to do with intervention and do not establish a right to exclude a general contractor that wants to intervene in a subcontractor's action against its surety.  See Response at 7–8.  For example, AEC cites Henderson, but the court there held only that a general contractor is not an indispensable party to a Miller Act suit.  See 49 F.3d at 1423.  Similarly, in United States ex rel. Apex Roofing & Insulation, Inc. v. Union Indemnity Insurance Co. of New York, the court decided "only that the district court had jurisdiction . . . to hear the suit against" the general contractor on its payment bond when the surety was not a party.  865 F.2d 1226, 1228 (11th Cir. 1989) (per curiam).  Notably, the next case cited by AEC actually suggests that a general contractor may join or be joined in an action against the surety if it has claims or defenses unavailable to the surety.  See United States ex rel. Way Pan., S.A. v. Uhlhorn Int'l, S.A., 238 F. Supp. 887, 891 (D.C.Z. 1965) ("If the surety thought that [the

---

[4] As a practical matter, AEC may recover faster if arbitration is ordered.  See Frank M. Sheesley Co., 239 F.R.D. at 415.  Federal policy favors arbitration because arbitration often leads to swifter, less expensive resolutions.  See Booth v. Hume Publ'g, Inc., 902 F.2d 925, 932 (11th Cir. 1990).

15

general contractor] might interpose a defense that would be helpful, established rules of procedure are available for making him a defendant."), aff'd sub nom. Nat'l Sur. Corp. v. United States ex rel. Way Pan., S. A., 378 F.2d 294 (5th Cir. 1967).

AEC's reliance on Coltin Electric is similarly unavailing. Here, unlike the subcontractor in Coltin Electric, AEC does not assert a contractual right to elect whom to sue. See Coltin Electric, Inc., 2013 WL 1150920, at *2; Response at 9. AEC asserts such a right under the Miller Act, but the court in Coltin Electric did not find a statutory right to exclude the general contractor. Moreover, the court there could not have found such a right under the Miller Act because the case was brought under Alabama state law, not under the federal Miller Act. See Coltin Electric, Inc., 2013 WL 1150920, at *2.

In addition, unlike this case, Coltin Electric did not involve an arbitration clause. See Pro Lawns, Inc., 2015 WL 350637, at *5; Subcontract at 23–25. Pro Lawns, however, did. In Pro Lawns, a subcontractor sued its general contractor's sureties in a diversity action alleging that the sureties owed the subcontractor money pursuant to the payment bond issued by the sureties in accordance with Alabama state law. See 2015 WL 350637, at *1. The general contractor moved to intervene and to compel arbitration. Id. The subcontractor argued against intervention by urging the court to follow the reasoning of Coltin

16

Electric. Id. at *4. Declining to follow Coltin Electric, the court in Pro Lawns explained:

> Unlike the present case, [the Coltin Electric] plaintiff's decision to sue the surety alone was not intermingled with its desire not to arbitrate. Arbitration is a non-factor in Coltin. The presence of the arbitration variable in this case raises the question of whether a plaintiff's tactical avoidance of arbitration is a legitimate goal to be protected when weighing the impact of prejudice to the existing parties under Rule 24(b).

Id. at *5. The court found the subcontractor's strategy to avoid its obligation to arbitrate disputes with the general contractor to be a "significant distinction" that justified not following Coltin Electric as persuasive authority. Id. The court noted that, "[a]lthough [the subcontractor] is entitled to sue [the sureties] alone without joining [the general contractor], it is also contractually bound to arbitrate the same underlying factual disputes with [the general contractor]." Id. Moreover, the court found that permitting the general contractor to intervene would "promote judicial economy" and "not unduly prejudice [the subcontractor's] rights." Id. Here, given the Subcontract's arbitration clause and the absence of jurisdictional problems caused by Haskell's intervention, the facts more closely resemble the facts in Pro Lawns than those in Coltin Electric. Consequently, the Court finds Pro Lawns, not Coltin Electric, to be the more appropriate persuasive authority in this case.

Although AEC has a right to sue the Surety Defendants alone, AEC has no right under the Miller Act to exclude Haskell from the action. Thus, the

Court finds that considerations of undue delay or prejudice to the existing parties do not weigh against permitting Haskell to intervene. Rather, permitting intervention will further judicial economy, "allow[ing] the court to resolve all related disputes in a single action." Fed. Sav. & Loan Ins. Corp., 983 F.2d at 216.

## IV. Conclusion

Based upon the foregoing, the Court will exercise its discretion to permit Haskell to intervene in this action. Haskell has timely moved to intervene, its claims share common questions of law and fact with the main action, and its participation will not unduly delay or prejudice the adjudication of the original parties' rights. Now that Haskell is a party to this action, the Court recognizes Haskell's Arbitration Motion as properly before the Court. Until the Court resolves the Arbitration Motion and the Motion to Stay Pending Resolution of Arbitration, the Court will stay discovery and all other case management deadlines. Thus, the Court will grant, in part, the Surety Defendants' Motion to Stay Pending Deadlines.[5]

Accordingly, it is

**ORDERED:**

---

[5] On November 2, 2021, AEC filed American Electric Company, LLC's Motion for Leave to Commence Discovery (Doc. 30). In light of the Court's determination that discovery is due to be stayed pending resolution of the Arbitration Motion, the Court will deny AEC's Motion for Leave to Commence Discovery as moot.

1. The Haskell Company's Motion to Intervene (Doc. 14) is **GRANTED**.

2. Defendants, Travelers Casualty & Surety Co., Zurich American Insurance Co. and Fidelity and Deposit Company of Maryland's Motion to Stay All Pending Deadlines (Doc. 24) is **GRANTED** to the extent that

   a. Discovery is **STAYED**, and the parties are relieved of their obligation to file a Uniform Case Management Report at this time.

   b. All further deadlines, obligations, and proceedings are **STAYED** until further order of the Court.

   c. In all other respects, the motion is **DENIED**.

3. Plaintiff American Electric Company, LLC's Motion for Leave to Commence Discovery (Doc. 30) is **DENIED** as moot.

**DONE AND ORDERED** in Jacksonville, Florida, on November 12, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc30
Copies to:

Counsel of Record

19