# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA
f/u/b/o AMERICAN ELECTRIC
COMPANY, LLC,

      Plaintiff,

v.                              Case No.  3:21-cv-614-MMH-LLL

TRAVELERS CASUALTY &
SURETY CO., ZURICH
AMERICAN INSURANCE CO.,
FIDELITY AND DEPOSIT
COMPANY OF MARYLAND, and
THE HASKELL COMPANY,

      Defendants.
_____/

## O R D E R

    **THIS CAUSE** is before the Court on Defendant The Haskell Company's (Haskell) Motion to Compel Dispute Resolution and Arbitration and Stay Action Pending Arbitration and Supporting Memorandum of Law (Doc. 15; Motion to Compel), filed August 26, 2021, as well as Defendants, Travelers Casualty & Surety Co., Zurich American Insurance Co., and Fidelity and Deposit Company of Maryland's (collectively, Surety Defendants) Motion to Stay Pending Resolution of Arbitration and Supporting Memorandum of Law (Doc. 16; Motion to Stay), filed August 26, 2021.  Plaintiff, United States of America for the use

and benefit of American Electric Company, LLC (AEC) timely filed a response in opposition to the Motion to Compel and the Motion to Stay. <u>See</u> United States of America f/u/b/o American Electric Company's Opposition to The Haskell Company's Motions to Intervene and Compel Arbitration and to the Sureties [sic] Motion to Stay Proceedings (Doc. 20; Response), filed September 8, 2021. With leave of the Court, Haskell filed a reply to the Response on October 5, 2021. <u>See</u> Proposed Intervenor, The Haskell Company's Reply to United States of America f/u/b/o American Electric Company's Opposition to The Haskell Company's Motions to Intervene and Compel Arbitration (Doc. 25; Reply). Accordingly, this matter is ripe for review.

## I. Underlying Dispute[1]

### A. The Construction Project

In 2016, Haskell entered into a contract with the United States Coast Guard to be the general contractor on a construction project at the National

---

[1] The issue here is whether the Court should compel AEC and Haskell to arbitrate their dispute. Motions to compel arbitration are treated as motions to dismiss, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. <u>See</u> <u>Owings v. T-Mobile USA, Inc.</u>, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013); <u>Bell v. Atl. Trucking Co.</u>, No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), <u>aff'd</u>, 405 F. App'x 370 (11th Cir. 2010). A motion seeking to compel arbitration is a factual attack on the court's jurisdiction "as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the [disputed] claims." <u>Bell</u>, 2009 WL 4730564, at * 3; <u>see also</u> <u>Owings</u>, 978 F. Supp. 2d at 1222. Here, the parties have presented the relevant subcontract and payment bond. For purposes of resolving the instant motions, the Court accepts the facts as alleged by the parties in their motions, and supported by the subcontract and payment bond, as true. <u>See</u> <u>Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.</u>, 533 F.3d 1342, 1345 (11th Cir. 2008); <u>Bell</u>, 2009 WL 4730564, at *3; <u>Northbrook Indem. Co. v.</u>

Security Cutters Homeport at the U.S. Coast Guard Base in Honolulu, Hawaii (Project).  See Motion to Compel, Ex. A: Order for Supplies or Services (Doc. 15-1).  In accordance with the Miller Act, 40 U.S.C. § 3131 et seq., Haskell posted a payment bond with the Surety Defendants.  See 40 U.S.C. § 3131(b)(2) ("Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building . . . a person must furnish . . . . [a] payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work . . . ."); Motion to Compel, Ex. C: Payment Bond (Doc. 15-3; Payment Bond).  Pursuant to the terms of the Payment Bond, the Surety Defendants and Haskell are jointly and severally liable for payment of the full amount guaranteed.  See Payment Bond at 2.  In 2017, Haskell entered into a subcontract agreement with AEC for AEC to perform work on the Project.  See Motion to Compel, Ex. B: Subcontract Agreement (Doc. 15-2; Subcontract).

B.     **The Arbitration Provision**

Article 17 of Attachment A to the Subcontract is titled "Choice of Law, Arbitration, and Venue" (Arbitration Provision).  Subcontract at 23–25.  This Arbitration Provision requires that, in the event of a dispute, AEC and Haskell must first attempt to negotiate the matter between them:

---

First Auto. Serv. Corp., No. 3:07-cv-683-J-32JRK, 2008 WL 3009899, at *1 n.2 (M.D. Fla. Aug. 1, 2008).

> (a) Negotiation Prior to Arbitration: Prior to any arbitration and/or litigation arising under this Subcontract Agreement, the parties shall each appoint a corporate officer (someone other than the project manager responsible for the Project) to meet to negotiate the claim/dispute. Such corporate officer shall have full settlement authority to resolve the claim/dispute. This settlement meeting shall be a condition precedent to the filing of any arbitration and/or litigation.

Id. at 23. If negotiation is unsuccessful, the Arbitration Provision mandates that disputes be resolved through binding arbitration:

> (b) <u>Scope and Venue of Arbitration</u>: All claims, counterclaims or disputes between Contractor and Subcontractor arising out of or related to the Subcontract, whether based on contract or tort, which are not resolved pursuant to Article 16,[2] shall be decided by binding arbitration in Jacksonville, Duval County, Florida, in accordance with the Construction Industry Rules of the American Arbitration Association ("AAA") then existing subject to the requirements and limitations set forth below.

Id. at 24. The Arbitration Provision limits the discovery available in the arbitration and mandates the use of offers of settlement to determine whether a party will be entitled to attorneys' fees and costs. See id. at 24–25.

## C. This Proceeding

AEC commenced this action on June 18, 2021, by filing suit under the Miller Act against the Surety Defendants. See Federal Miller Act Complaint (Doc. 1). In its amended complaint, filed July 6, 2021, AEC alleges that it is

---

[2] Article 16 of the Subcontract governs disputes involving the Project's owner (the United States of America) or third parties and does not apply here. See Subcontract at 23; Motion to Compel at 13–14.

entitled to recover from the Surety Defendants on the Payment Bond because Haskell did not pay AEC everything due under the Subcontract or pay AEC for extra work and increased costs incurred as a result of Haskell's actions.  See Plaintiff, United States of America f/u/b/o American Electric Company, LLC's Amended Federal Miller Act Complaint (Doc. 5; Complaint) ¶¶ 14, 16, 18, 20, 23–24, 32–36.  On August 26, 2021, Haskell moved to intervene in this action and filed the Motion to Compel in which it seeks a Court order requiring AEC to comply with the dispute resolution and arbitration requirements of the Subcontract's Arbitration Provision.  See The Haskell Company's Motion to Intervene Pursuant to Rule 24, Federal Rules of Civil Procedure and Supporting Memorandum of Law (Doc. 14); Motion to Compel.  In an Order dated November 12, 2021, the Court granted Haskell permission to intervene as a defendant and recognized the Motion to Compel as properly before the Court.  See Order of November 12, 2021 (Doc. 32).

Haskell asks the Court to compel AEC to "participate in dispute resolution and arbitrate its claims in this action in accordance with the dispute resolution and arbitration clauses contained in Haskell and AEC's Subcontract."  Motion to Compel at 1.  Haskell represents that it seeks "to arbitrate the issues concerning Haskell's alleged breach of the Subcontract, whether AEC is owed money under the Subcontract and Haskell's claim against AEC for damages arising from AEC's work on the USCG Project," Reply at 3,

5

and that, in arbitration, it plans to assert a counterclaim against AEC and numerous defenses to AEC's claims, see Motion to Compel at 5, 13. Haskell also represents that it is not seeking to arbitrate the Miller Act claim against the Surety Defendants. See Reply at 3.

## II.   The Parties' Arguments

In support of its request to compel arbitration, Haskell argues that it and AEC agreed in the Subcontract's Arbitration Provision to arbitrate disputes between them. See Motion to Compel at 11–12. Haskell asserts that this action is fundamentally a dispute between AEC and Haskell because the "substance of AEC's claims and allegations . . . concern[s] Haskell's alleged failure to compensate AEC" for work performed under the Subcontract, extra work on the Project, and increased performance costs. Id. at 12. Thus, according to Haskell, this dispute arises out of or is related to the Subcontract, thereby triggering the Arbitration Provision. Id. at 13. Haskell further asserts that the Miller Act does not preclude arbitration between a subcontractor and a general contractor that have agreed to arbitrate disputes. See id. at 10.

As to the question of which tribunal should address the issue of arbitrability, Haskell contends that the Arbitration Provision delegates the power to decide threshold questions of arbitrability to the arbitrator, rather than the Court. See id. at 16. Haskell bases this contention on the Arbitration Provision's language, which states that arbitration shall occur "in accordance

6

with the Construction Industry Rules of the American Arbitration Association." Id. Because the Construction Industry Arbitration Rules of the American Arbitration Association (AAA Construction Rule(s))[3] empower the arbitrator to rule on his or her own jurisdiction, Haskell asserts that any questions regarding the scope or validity of the Arbitration Provision should be referred to the arbitrator. See id.

In addition, Haskell asks the Court "to stay the current action as to all parties until resolution of the arbitration between AEC and Haskell." Id. at 1. In support, Haskell asserts that federal law requires a stay pending the resolution of arbitration. Id. at 17. Haskell further contends that numerous courts have granted a stay in similar circumstances. Id. at 17–19. In Haskell's view, a stay would promote judicial economy and efficiency because the arbitration would "resolve many of the claims and issues present in this action." Id. at 19. The Surety Defendants present essentially the same arguments in the Motion to Stay. See Motion to Stay at 6–9.

In opposing the Motion to Compel, AEC argues that Haskell cannot force AEC to arbitrate its Miller Act claim against the Surety Defendants because the Arbitration Provision does not "encompass Miller Act claims" and because "Miller Act claims are not arbitrable." Response at 9. AEC also asserts that

---

[3] See generally Construction Industry Arbitration Rules and Mediation Procedures (Am. Arb. Ass'n 2015), https://adr.org/sites/default/files/Construction-Rules-Web.pdf.

the Arbitration Provision is unenforceable because it is unconscionable. See id. at 14. Specifically, AEC asserts that the offers of settlement clause and the limitations on discovery in arbitration make the Arbitration Provision substantively unconscionable. See id. at 15–17. AEC also argues that the Arbitration Provision is procedurally unconscionable because "this was a contract of adhesion" that is unenforceable due to the "disparity in bargaining power" between AEC and Haskell and the "convoluted nature" of the Arbitration Provision itself. Id. at 18–19. AEC maintains that the Court, not the arbitrator, should decide the question of unconscionability because "the Subcontract lacked a delegation clause." Id. at 15. Regarding the Motion to Stay, AEC argues that "there is no risk of inconsistent results because Miller Act claims are not arbitrable" and, therefore, a stay would be inappropriate. Id. at 13.

## III. Discussion

### A. Motion to Compel

As discussed below, the Court finds that Haskell's Motion to Compel is due to be granted because AEC and Haskell manifested a clear and unmistakable intent for the arbitrator to resolve whether disputes between them are arbitrable.

## 1.   Applicable Law

Haskell's Motion to Compel is brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA).[4]  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  This provision of the FAA represents "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'"  Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1273 (11th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp, 460 U.S. 1, 24 (1983)).  Federal policy, therefore, requires courts to "construe arbitration clauses generously, resolving all doubts in favor of arbitration[.]"  Becker v. Davis, 491 F.3d 1292, 1305 (11th Cir. 2007), abrogated on other grounds by Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009).  As such, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, [the Court] shall on

---

[4]  "Enacted pursuant to the Commerce Clause, the FAA applies only to a contract 'evidencing a transaction involving [interstate] commerce.'"  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370 (11th Cir. 2005) (alteration in original) (quoting 9 U.S.C. § 2).  The Court finds, and the parties do not dispute, that the commerce requirement is satisfied and the FAA is applicable.

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Section 4 of the FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties,[5] for an order directing that such arbitration proceed in the manner provided for in such agreement." See 9 U.S.C. § 4. The Court uses a two-step inquiry to assess the merits of a motion to compel arbitration under FAA § 4. See Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). "The first step is to determine whether the parties agreed to arbitrate the dispute." Id. (citation omitted). The second step "involves deciding whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" Id. (quotation omitted).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements."[6]

---

[5] Because Section 4 of the FAA does not confer subject matter jurisdiction on federal courts, for an action to compel arbitration to fall within the jurisdiction of the Court there must be some independent basis for jurisdiction over the underlying dispute. See Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). In the instant case, jurisdiction is premised on a claim arising under federal law, see 28 U.S.C. § 1331, and the Court is satisfied of its jurisdiction over the action.

[6] The Subcontract specifies that it "shall be construed according to the laws of the State of Florida." Subcontract at 24. As both AEC and Haskell rely on Florida law in their filings, it appears they agree that Florida law is applicable. See Response at 14; Reply at 6 nn.8, 10. Accordingly, the Court applies Florida law where the FAA requires state law to be utilized.

Emps. Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted).  Thus, in determining whether the parties agreed to arbitrate a dispute, the Court applies the federal substantive law of arbitrability as applicable to any arbitration agreement within the FAA's coverage.  Klay, 389 F.3d at 1200 (citation omitted).  Although "[t]his inquiry must be undertaken against the background of a 'liberal federal policy favoring arbitration agreements[,]' . . . [b]ecause arbitration is a matter of contract," the policy in favor of arbitration cannot supplant the requirement of an agreement to arbitrate.  Id. (citations omitted).  In short, "arbitration is 'a matter of consent, not coercion[,]'" and "a party ordinarily will not be 'compelled to arbitrate unless that party has entered into an agreement to do so.'" World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir. 2008) (quotations omitted), abrogated on other grounds by Arthur Andersen LLP, 556 U.S. 624.

In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–85 (2002), the Supreme Court clarified the respective roles of courts and arbitrators with respect to arbitration agreements.  Notwithstanding the policy in favor of arbitration agreements, the question of arbitrability—that is whether the parties have submitted a particular dispute to arbitration—is properly a judicial determination for the court.  Id.  The question of arbitrability has a limited scope, however, and encompasses only the "narrow circumstance where

contracting parties would likely have expected a court to have decided the gateway matter [and] where they are not likely to have thought that they had agreed that an arbitrator would do so[.]" Id. Thus, in Howsam, the Court concluded that the question of arbitrability is limited to circumstances where "reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Id. at 83–84. Such gateway disputes for the court include "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy[.]" Id. at 84. In contrast, "general circumstance[s] where parties would likely expect that an arbitrator would decide the gateway matter" do not present a "'question of arbitrability'" for the court. Id. Howsam, therefore, instructs that, absent an agreement to the contrary, issues of "substantive" arbitrability are for courts to decide, while issues of "procedural" arbitrability are for arbitrators to decide. Id. at 85. Substantive issues of arbitrability concern "whether a particular dispute falls within the scope of an arbitration clause" and "the necessary threshold question of whether that clause is enforceable." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004).

More recently, in Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287 (2010), the Court further examined the respective roles of the court and the arbitrator in determining threshold issues of arbitrability.

There, the Court reiterated that "whether parties have agreed to 'submit a particular dispute to arbitration' is typically an 'issue for judicial determination.'" Id. at 296 (quoting Howsam, 537 U.S. at 83 (internal quotation marks omitted)).  Additionally, the Court affirmed that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Id.  As such, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Id. at 297 (emphasis in original).  Thus, arbitrability necessarily involves two questions: 1) whether an arbitration agreement exists, which calls into question contract formation; and 2) whether the arbitration provision applies to the dispute at issue, which involves a determination of the scope of the arbitration agreement.  See id. at 297–302, 298 n.6; see also, e.g., Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008).  "[O]nce a court is satisfied with the 'formation of the parties' arbitration agreement' and 'the applicability of the specific arbitration clause that a party seeks to have the court enforce,' . . . reference to an arbitrator to resolve any outstanding issue is appropriate." Solymar Inv., Ltd. v. Banco Santander, S.A., 672 F.3d 981, 993 (11th Cir. 2012). Indeed, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract

principles and (b) the claims before the court fall within the scope of that agreement." Lambert, 544 F.3d at 1195 (citing 9 U.S.C. §§ 2–4).

With regard to the question of whether an arbitration provision applies to the dispute at issue, the Supreme Court has instructed that where the parties have agreed to arbitrate some matters pursuant to an arbitration clause, "the 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" Granite Rock, 561 U.S. at 298 (additional quotation marks omitted) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)). Indeed, "federal courts interpret arbitration clauses broadly where possible," see Solymar Inv., 672 F.3d at 988, and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" see First Options, 514 U.S. at 945 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25) (emphasis added). Nevertheless, the presumption in favor of arbitrability must be applied only "where a validly formed and enforceable agreement is ambiguous about whether it covers the dispute at hand." Granite Rock, 561 U.S. at 301.

Although the question of whether parties submitted a particular dispute to arbitration is typically a judicial determination, such is not the case where the parties "'clearly and unmistakably provide otherwise.'" Howsam, 537 U.S. at 83 (citation omitted). Notably, parties may agree to arbitrate the question of

arbitrability.  See Granite Rock, 561 U.S. at 297 n.5; First Options, 514 U.S. at 943 (the question of "'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.  Did the parties agree to submit the arbitrability question itself to arbitration?" (emphasis in original)).  Under the FAA, a delegation of authority to an arbitrator "is valid, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'"  Given v. M&T Bank Corp. (In re Checking Acct. Overdraft Litig.), 674 F.3d 1252, 1255 (11th Cir. 2012) (quoting 9 U.S.C. § 2).[7]  As such, "[c]ourts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question."  Id. (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69 n.1 (2010)).  In this context, an agreement to arbitrate the gateway question of arbitrability "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  Rent-A-Center, 561 U.S. at 70; see also Given, 674 F.3d at 1255.  Thus, when faced with the question of whether a particular dispute is subject to arbitration, a court must inquire whether the parties agreed to submit the arbitrability question itself to arbitration.  First Options, 514 U.S. at 943.  In making this determination,

---

[7]  As such, the interpretation of the arbitrability agreement is also generally a matter of state law.  See Given, 674 F.3d at 1255.

"[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." Id. at 944 (quoting AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986) (internal brackets omitted)).  However, where a delegation provision in an arbitration clause is "clear and unmistakable," the decision of whether a dispute is within the scope of the arbitration agreement is a decision for the arbitrator, not the court.  Given, 674 F.3d at 1256–57.

Significantly, the Eleventh Circuit Court of Appeals instructs that "when a plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly." Parnell v. CashCall, Inc., 804 F.3d 1142, 1144 (11th Cir. 2015).  This is so because, when a provision of an arbitration agreement delegates "to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable[,] the courts only retain jurisdiction to review a challenge to that specific provision." Id. (citing Rent-A-Center, 561 U.S. at 72).  Thus, if there is no challenge to the delegation provision specifically, the FAA requires courts to "treat a delegation provision as valid and permit the parties to proceed to arbitration." Id.

Moreover, the Eleventh Circuit has held that when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties'

16

intent to delegate issues of arbitrability to an arbitrator.  Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005).  Indeed, in Terminix, the court found that the inclusion of the Commercial Arbitration Rules of the American Arbitration Association (AAA Commercial Rules) in the arbitration provision constituted evidence of a clear and unmistakable intent to delegate arbitrability decisions to the arbitrator.  See id.  In doing so, the court noted that the applicable AAA Commercial Rules provided that "'[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'"  Id. (quoting Am. Arbitration Ass'n, Commercial Arbitration Rules, http://www.adr.org/sp.asp?id=22173 # Toc13029601).  The court concluded that by incorporating the AAA Commercial Rules into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide issues of arbitrability, including determining the scope of the arbitration clause.  Id. Other courts have reached the same conclusion.  See, e.g., Shea v. BBVA Compass Bancshares, Inc., No. 1:12-cv-23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. March 7, 2013); S. Farms Ltd. v. Am. Farmland Invs. Corp., No. 6:06-cv-309-Orl-22DAB, 2006 WL 2038532, at *1–2 (M.D. Fla. July 19, 2006); United States v. Int'l Fid. Ins. Co., 232 F. Supp. 3d 1193, 1199 (S.D. Ala. 2017) (finding that the parties had agreed to arbitrate gateway issues of arbitrability because the subcontract at issue stated that "arbitration will be conducted 'in

accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect'" and those rules empowered the arbitrator to determine his or her jurisdiction).[8]

In an unpublished opinion issued earlier this year, the Eleventh Circuit applied the holdings of <u>Terminix</u> and <u>Parnell</u>.  <u>See</u> <u>In re Checking Acct. Overdraft Litig.</u>, 856 F. App'x 238, 243–45 (11th Cir. 2021).[9]  The court found that the parties had agreed to arbitrate all gateway issues because the relevant contract said that arbitration would be administered "according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes."  <u>Id.</u> at 243–44.  In doing so, the court noted:

> We have repeatedly ruled that the reference or incorporation of AAA Rules with language providing that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" demonstrates a clear and unmistakable intent that the arbitrator should decide all questions of arbitrability.

<u>Id.</u> at 243 (citing <u>JPay, Inc. v. Kobel</u>, 904 F.3d 923, 938–39 (11th Cir. 2018); <u>Spirit Airlines, Inc. v. Maizes</u>, 899 F.3d 1230, 1233 (11th Cir. 2018); <u>U.S.</u>

---

[8] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[9] "Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Nutraceuticals, LLC v. Cyanotech Corp., 769 F.3d 1308, 1311 (11th Cir. 2014); Terminix, 432 F.3d at 1332).  Notably, in an effort to avoid the effect of the incorporation of the AAA Rules, the plaintiffs argued that the delegation clause itself was unconscionable.  Id. at 245.  However, the court found that the plaintiffs did not point to "any specific deficiencies in the delegation clause" and only alleged that the delegation clause was unconscionable "'for the same reasons' as the contract more generally." Id. at 245.  Finding this challenge to be insufficient, the court concluded it was appropriate to send plaintiffs' challenges to the arbitrator.  Id.

### 2. Analysis

In the Motion to Compel, Haskell invokes the Arbitration Provision in the Subcontract.  See Motion to Compel at 11–12.  As an initial matter, the Court finds that the Arbitration Provision is a term of a validly formed written contract.[10]  See, e.g., Granite Rock, 561 U.S. at 296 (questions of contract formation are generally for the courts to decide); Solymar Inv., 672 F.3d at 990 (contract formation questions are reserved for courts of law).  AEC does not argue otherwise.  Nevertheless, AEC contends that the Arbitration Provision is unenforceable because it is unconscionable and that, even if the Arbitration

---

[10]  "A contract is made under Florida law when three elements are present: offer, acceptance, and consideration." Britt Green Trucking, Inc. v. FedEx Nat'l LTL, Inc., 511 F. App'x 848, 851 (11th Cir. 2013) (per curiam) (quoting SCG Harbourwood, LLC v. Hanyan, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012)).  The parties do not dispute that an offer, acceptance, and consideration were present here.

Provision is enforceable, it does not encompass this dispute.  See Response at 9, 14.  These arguments, however, concern the validity and scope of the Arbitration Provision.  In accordance with the binding precedent discussed above, the Court must not address such issues unless it is satisfied that AEC and Haskell did not agree "to arbitrate the dispute" about the validity and scope of the Arbitration Provision.  Klay, 389 F.3d at 1200.

Here, as in Rent-A-Center, the Court finds that the parties agreed to delegate the resolution of the question of arbitrability to the arbitrator.  See 561 U.S. at 68–70.  In reaching this conclusion, the Court finds that, within the Arbitration Provision, AEC and Haskell entered into an "antecedent agreement" to delegate such issues to the arbitrator.  Id. at 70.  Specifically, in the Arbitration Provision of the Subcontract, AEC and Haskell agreed that "all claims, counterclaims or disputes" between them "arising out of or related to the Subcontract . . . shall be decided by binding arbitration . . . in accordance with the Construction Industry Rules of the American Arbitration Association." Subcontract at 24.  Significantly, the applicable AAA Construction Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  AAA Construction Rule 9(a) (emphasis

added).[11]   Thus, the rules which AEC and Haskell agreed would govern the resolution of their disputes under the Subcontract delegate the issue of arbitrability of a dispute to the arbitrator.  Under Florida law, "[t]he language used in a contract is the best evidence of the intent and meaning of the parties." Smith v. Rainey, 747 F. Supp. 2d 1327, 1341 (M.D. Fla. 2010) (quoting Jenne v. Church & Tower, Inc., 814 So. 2d 522, 524 (Fla. 4th DCA 2002)); see also Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957).  Here, the Court concludes that, by incorporating the AAA Construction Rules into the Subcontract's Arbitration Provision, AEC and Haskell manifested their intent to delegate gateway issues of arbitrability to the arbitrator.  Indeed, the very language used

---

[11]  The full text of Rule 9 states:

R-9. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.  The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

AAA Construction Rule 9.

by AEC and Haskell compels the conclusion that they unequivocally manifested their intent to require issues of arbitrability to be resolved by the arbitrator. Like the incorporation of the AAA Commercial Rules in <u>Terminix</u>, the incorporation of the AAA Construction Rules here is a delegation of arbitrability issues to the arbitrator. <u>See</u> 432 F.3d at 1332. Applying ordinary state law principles that govern the formation of contracts, AEC and Haskell have evinced a clear and unmistakable intent to arbitrate certain questions, including the validity, enforceability, and scope of the Arbitration Provision. <u>See</u> <u>First Options</u>, 514 U.S. at 944; <u>Terminix</u>, 432 F.3d at 1332; <u>Int'l Fid. Ins.</u>, 232 F. Supp. 3d at 1199.

AEC does not contest the enforceability of the delegation clause specifically.[12] <u>See</u> Response at 14–19. Instead, AEC challenges the Arbitration Provision as a whole and the sections of it regarding offers of settlement and discovery. <u>See</u> <u>id.</u> at 9, 14–19. In doing so, AEC fails to identify "any specific deficiencies in the delegation clause." <u>In re Checking Acct. Overdraft Litig.</u>, 856 F. App'x at 245. Because AEC does not challenge the delegation clause specifically, it presents no argument proper for this Court to address. This is so because, in the face of an otherwise enforceable arbitration agreement with a delegation clause, the Court "only retain[s] jurisdiction to review a challenge"

---

[12] Instead of doing so, AEC asserts that there is no delegation clause. <u>See</u> Response at 15. As the preceding discussion shows, that assertion lacks any serious merit.

to the delegation provision.  <u>Parnell</u>, 804 F.3d at 1144.  Therefore, the Court is bound to enforce AEC and Haskell's agreement to delegate to the arbitrator questions of arbitrability.  <u>See</u> <u>id.</u>; <u>In re Checking Acct. Overdraft Litig.</u>, 856 F. App'x at 245.

In the Response, AEC does specifically argue that the Arbitration Provision cannot be invoked in the context of this Miller Act claim.  However, because this argument presents a question of arbitrability, pursuant to AEC and Haskell's agreement to delegate such gateway issues to the arbitrator, AEC must present the issue to the arbitrator for resolution.  <u>See</u> <u>Given</u>, 674 F.3d at 1256–57; <u>Shea</u>, 2013 WL 869526, at *4; <u>S. Farms</u>, 2006 WL 2038532, at *1–3. Similarly, AEC's alternative defense to arbitration—that the Arbitration Provision is unconscionable, in whole or in part—also presents a question for the arbitrator to resolve because, in light of the delegation clause, "any challenge to the validity of the Agreement as a whole [is] for the arbitrator." <u>Parnell</u>, 804 F.3d at 1146–47 (quoting <u>Rent-A-Center</u>, 561 U.S. at 72).

The Court next considers whether there are any "legal constraints external to the parties' agreement [which] foreclose[] arbitration." <u>Klay</u>, 389 F.3d at 1200.  In this regard, AEC suggests that sending its Miller Act claim against the Surety Defendants to arbitration would violate the provisions and purpose of the Miller Act.  <u>See</u> Response at 11–12.  However, AEC's argument is unavailing because Haskell is not seeking to send the Miller Act claim to

arbitration.  See Reply at 3 ("Haskell does not seek to arbitrate AEC's Miller Act claim against the Surety Defendants or compel the Surety Defendants to arbitration.").  Moreover, to the extent that AEC asserts that its dispute with Haskell cannot be arbitrated because of the Miller Act, see Response at 9, that assertion is legally incorrect.  Indeed, the Eleventh Circuit has unequivocally stated that "the Miller Act does not preclude arbitration under the FAA where the parties have previously agreed to arbitrate disputes."  Emps. Ins. of Wausau, 251 F.3d at 1324.  Therefore, no legal constraints external to the parties' agreement foreclose arbitration, and AEC and Haskell's agreement to delegate issues of arbitrability to the arbitrator is enforceable under the FAA.

For the foregoing reasons, the gateway questions of whether the Arbitration Provision validly encompasses this dispute between AEC and Haskell and whether the Arbitration Provision is unconscionable are due to be referred to arbitration for determination.  Thereafter, whether the substantive dispute between AEC and Haskell will be arbitrated depends on the arbitrator's resolution of the gateway arbitrability questions.[13]  As such, the Court must now turn to the question of whether to stay the original Miller Act claim against

---

[13]  It is unclear to the Court whether Haskell still seeks to enforce section (a) of the Arbitration Provision regarding negotiation before arbitration.  See Subcontract at 23.  To the extent Haskell does seek to enforce that section, the arbitrator would have to determine the enforceability and applicability of that section as well.

the Surety Defendants pending the resolution of the arbitration between AEC and Haskell.

### B.    Motion to Stay Proceeding

Haskell and the Surety Defendants ask the Court to stay these proceedings pursuant to § 3 of the FAA.  See Motion to Compel at 17; Motion to Stay at 6.  Section 3 provides that "upon being satisfied that the issue involved . . . is referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3.  Additionally, the Supreme Court has observed that, when not all parties to the action are subject to the arbitration agreement at issue, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control its docket."  Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23; see Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  Notably, when proceeding with litigation of some non-arbitrable claims is feasible, "courts generally refuse to stay proceedings of [the] nonarbitrable claims." Klay, 389 F.3d at 1204.  However, courts should consider whether the "arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."  Id.

25

On this issue, the district court's decision in <u>United States ex rel. Vining Corp. v. Carothers Construction, Inc.</u> is persuasive.  No. 5:09-CV-438(CAR), 2010 WL 1931100 (M.D. Ga. May 12, 2010).  There, the court ordered the subcontractor and the general contractor to arbitrate their dispute and stayed the subcontractor's Miller Act claim against the surety pending resolution of the arbitration.  <u>Id.</u> at *4–5.  While noting that it was "not required to stay the action" because the surety was not being compelled to arbitration, the court exercised its "discretionary power" to order a stay.  <u>Id.</u> at *4.  The court reasoned that a stay "would help promote judicial economy and efficiency by preventing needless litigation and waste of judicial resources."  <u>Id.</u> at *5.  In doing so, the court explained that, "[b]ecause the underlying dispute relates to the same factual allegations set out in the Subcontractor's Complaint, if the parties were to arbitrate and litigate at the same time, not only would the possibility of inconsistent outcomes exist, but also the parties may incur unnecessary expenses."  <u>Id.</u>; <u>see also</u> <u>Int'l Fid. Ins.</u>, 232 F. Supp. 3d at 1200–01 (noting the "wealth of cases" cited by defendants and concluding "that, for reasons set forth in the authorities cited by the defendants, the plaintiff's Miller Act claims against [the surety] should be stayed" while the general contractor and subcontractor participated in arbitration).

Here, § 3 of the FAA does not require the Court to stay the entire action because AEC's Miller Act claim against the Surety Defendants is not being

referred to arbitration.  See Vining Corp., 2010 WL 1931100, at *4.  However, considering that the Miller Act claim relies on the same underlying factual allegations as the dispute being ordered to arbitration, the Court, in its discretion, will stay this proceeding pending the resolution of arbitration.  See Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23; Int'l Fid. Ins., 232 F. Supp. 3d at 1200–01.  Importantly, AEC's Miller Act claim against the Surety Defendants depends on whether Haskell paid AEC all sums owed under the Subcontract.  See Complaint ¶¶ 14, 16, 18, 20, 23–24, 33–34.  Whether Haskell paid AEC everything owed under the Subcontract is part of the dispute being ordered to arbitration.  See Reply at 3.  Thus, the arbitrable issues in this case predominate, and the outcome of the arbitration will likely affect the outcome of the Miller Act claim against the Surety Defendants.  See Klay, 389 F.3d at 1204.  Like the court in Vining Corp., this Court finds that staying this action pending the resolution of the arbitration will prevent needless litigation, thereby advancing judicial economy and efficiency.  See 2010 WL 1931100, at *5.  In contrast, proceeding here while the arbitration is ongoing may cause unnecessary expense for the parties and create the risk of inconsistent results.  See id.  As such, a stay is the proper course of action.

## IV.  Conclusion

Based upon the foregoing, Haskell's Motion to Compel is due to be granted because AEC and Haskell clearly and unmistakably manifested their intent

that the arbitrator, not this Court, decide the issues of arbitrability.  In the interest of judicial economy, the Court will grant, in part, the Surety Defendants' Motion to Stay.  Accordingly, it is

**ORDERED:**

1. Defendant Haskell's Motion to Compel Dispute Resolution and Arbitration and Stay Action Pending Arbitration (Doc. 15) is **GRANTED**.

2. AEC and Haskell are **DIRECTED** to arbitrate their dispute in this action in accordance with the arbitration agreement between them (Doc. 15-2; Subcontract, Attachment A, Article 17).

3. Defendants Travelers Casualty & Surety Co., Zurich American Insurance Co., and Fidelity and Deposit Company of Maryland's Motion to Stay Pending Resolution of Arbitration (Doc. 16) is **GRANTED** to the extent that

   a. This case is **STAYED** pending the completion of the arbitration proceedings.

   b. The Clerk of the Court is **DIRECTED** to terminate any pending motions and keep the case administratively closed until further Order.

   c. In all other respects, the motion is **DENIED**.

28

4.      The parties are **DIRECTED** to file a joint status report upon the
conclusion of the arbitration proceedings.  If the arbitration is not
completed by **June 30, 2022**, then the parties shall file a joint
status report at that time and every 120 days thereafter until the
arbitration proceedings are completed.

**DONE AND ORDERED** in Jacksonville, Florida, on December 17, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record

29